UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LARON MCKINLEY BEY,<br><br>　　　　　　　Plaintiff,<br>v.<br>WILLIAM POLLARD,<br>DONALD STRAHADA, ANTHONY MELI,<br>BRIAN GREFF, JESSE SCHNEIDER,<br>CORY SABISH, SHANE WALLER,<br>JOSEPH BEAHM, JEREMY STANIEC,<br>JEFFREY GILL, MATTHEW BURNS,<br>JESSE JONES, GAIL WALT, and<br>CHRISTINE DEYOUNG,<br><br>　　　　　　　Defendants. | Case No. 13-CV-952-JPS<br><br><br><br>ORDER |

　　　　The plaintiff, Laron McKinley Bey, a prisoner incarcerated at Waupun Correctional Institution ("WCI"), proceeds *pro se* in this matter, in which he alleges that his civil rights were violated. (Docket #88). On August 25, 2014, the defendants filed a motion for summary judgment. (Docket #151). On September 23, 2014, the plaintiff filed a Cross-Motion for Summary Judgment along with a Motion to Stay the defendants' Motion for Summary Judgment. (Docket #187, #189). On September 30, 2014, the court granted the Motion to Stay the summary judgment based on the plaintiff's outstanding discovery requests. (Docket #203). On October 14, 2014, the plaintiff filed an Amended Cross-Motion for Summary Judgment (Docket #210) and an Amended Opposition to the defendants' Motion for Summary Judgment (Docket #216). On October 23, 2014, the defendants filed a Reply to the Motion for Summary Judgment. (Docket #221).

　　　　Before addressing the cross-motions for summary judgment, the court will first resolve several procedural motions. First, on July 18, 2014, the defendants filed a Motion for a Protective Order. (Docket #137). The motion

related to documents requested in the plaintiff's Motion to Compel, which the court previously addressed on August 20, 2014. (Docket #150). Thus, the defendants' Motion for a Protective Order is moot and as such will be denied.

On September 23, 2014, the plaintiff filed a Motion for the Disclosure of Documents. (Docket #192). On September 29, 2014, the defendants submitted a response stating that they would provide the requested discovery materials to the plaintiff by Thursday, October 2, 2014. (Docket #202 at 2). As such, the plaintiff's Motion for Disclosure of Documents will be denied as moot.

The plaintiff's Cross-Motion for Summary Judgment was filed on September 23, 2014, almost one month after the summary judgment deadline. To date, the plaintiff has not provided any justification for the delayed filing. As such, the court will deny the Cross-Motion for Summary Judgment and Amended Cross Motion for Summary Judgment as untimely. (Docket #187, #210).[1]

On September 25, 2014, the plaintiff filed a Motion for Judicial Notice of Adjudicative Facts. (Docket #199). The defendants did not reply to the plaintiff's motion. The plaintiff requests that the court take judicial notice that the defendants' submitted video evidence captured the March 8, 2013 incident in this case through silent low-resolution frames that record only two frames per second separated by a half second interval. In support of his motion, the plaintiff submits an affidavit referencing another case that discussed the video from Waupun Correction Institution. Without further information, this is not the type of evidence of which the court may take

---

[1] Even if the court were to consider the plaintiff's late filing, the motion would be denied on substantive grounds. As discussed in detail below, material issues of fact exist in this case that preclude summary judgment for either party.

judicial notice. Fed. R. Evid. 210. Moreover, the court notes the possibility that the video may not be a complete showing of the alleged incident. For these reasons, judicial notice is not appropriate in this instance. Accordingly, the plaintiff's Motion for Judicial Notice will be denied.

Finally, on October 22, 2014, the plaintiff filed a document captioned "Motion for Leave to File Paper for an Emergency Stay of Summary Judgment" (Docket #218), together with a motion for an emergency stay of summary judgment (Docket #219). The plaintiff asserts that his Amended Opposition to the defendants' Motion for Summary Judgment and his declaration in support were incorrectly filed on the docket. The same day, however, the Clerk of the Court amended the docket to correctly identify the plaintiff's Amended Opposition (Docket #216) and the plaintiff's declaration in support of the Amended Opposition (Docket #217). As such, the plaintiff's motions for an emergency stay (Docket #218, #219) will be denied as moot.

1. FACTUAL BACKGROUND

    1.1    The Parties

The plaintiff, LaRon McKinley Bey, was confined at all times material to this action at the Waupun Correctional Institution ("WCI"). WCI is a maximum-security institution located at Waupun, Wisconsin. It is a very regimented, highly supervised and secure institution. Staff security is supplemented through the use of video cameras placed throughout the Institution. Regular rounds by security staff are made of all living units as well as work sites, recreation, library, etc. The plaintiff has been confined at the WCI since July 11, 2012.

Defendants Matthew Burns ("Burns"), Jesse J. Jones ("Jones"), Jeremy Staniec ("Staniec"), and Jeffrey Gill ("Gill") are employed by the DOC as Correctional Officers at the WCI. Defendant Brian Greff ("Greff") is

employed by the DOC as a Corrections Program Supervisor at the WCI. Defendants Kristine DeYoung ("DeYoung") and Gail Waltz ("Waltz") are employed by the Wisconsin DOC as Nurse Clinicians 2 at the WCI. Defendant Anthony Meli ("Meli") is employed by the DOC as the Security Director at the WCI. Defendant Jessie Schneider ("Schneider") is employed by the DOC as a Supervising Officer 1 (Lieutenant) at the WCI. Defendant Shane Waller ("Waller") is currently employed by the DOC as a Supervising Officer 1 (Lieutenant) at the WCI. Waller was previously employed by the DOC as a Correctional Sergeant at the WCI. Defendant Corey Sabish ("Sabish") is currently employed by the DOC as a Supervising Officer 1 (Lieutenant) at the WCI. Defendant Donald Strahota ("Strahota") is employed by the DOC as the Deputy Warden at the WCI. Defendant William Pollard ("Pollard") is presently employed by the DOC as Warden of the WCI. Pollard has held this position since March 27, 2011. Prior to becoming Warden at WCI, Pollard was Warden of the GBCI. Pollard held that position since March 2005.

### 1.2 Plaintiff's Allegations

As discussed below, the parties dispute the majority of the material facts related to the alleged incidents in this case. Thus, a reference to only undisputed facts would be unhelpful, and instead the court will briefly summarize the plaintiff's allegations in the operative complaint. (Docket #88).

Plaintiff's action stems, in part, from an incident on March 8, 2013. Plaintiff alleges that he was moved from one area to another area of the institution, and during transport the correctional officers twisted and wrenched his wrist for 20 to 30 minutes, causing excruciating pain and broken, fractured, and sprained fingers. Then, plaintiff alleges that he was transported to a "strip cage" and a strip search was conducted. Plaintiff

further alleges that the pain caused him to lose control of his bowels, after which he was slammed into the steel cage door. Plaintiff also alleges that he was kicked while wearing leg shackles, the impact of which caused a 2.5-inch laceration on his right ankle. Plaintiff also alleges that when he was being escorted from the strip search cage, Waller brandished a taser and fired it near plaintiff to scare him. Plaintiff alleges that following this incident, he was denied medical treatment for his injuries. Plaintiff further alleges that certain supervisors, discussed more fully below, failed to properly train and supervise the staff.

2. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4).

3. ANALYSIS

The court previously determined that the plaintiff could proceed on the following claims: 1) Failure to Act claim against Pollard, Strahada, Meli, Greff, and Schneider; 2) Failure to Train claim against Strahada, Meli, Greff, and Schneider; 3) Excessive Force claims against Gill, Beahm and Waller; and 4) Medical Deliberate Indifference against Sabish, Waller, Beahm, Gill, Staniec, Jones, Burns, Deyoung, and Waltz. The defendants contend that they are entitled to summary judgment as to all claims. As detailed below, the court will grant in part and deny in part the defendants' Motion for Summary Judgment.

3.1 First Claim – Failure to Act

The court previously found a cognizable claim against Pollard, Strahada, Meli, Greff, and Schneider for failure to act in relation to the strip-search policy. The Seventh Circuit has recognized that where an officer has a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right but fails to do so, he may be held liable. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). That standard has become known as a "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *Harper*, 400 F.3d at 1064. "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation…." *Id.* Additionally, Title 42 U.S.C. § 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or

participated in an alleged unconstitutional deprivation of rights. *Zentmeyer v. Kendall Cnty.*, 220 F.3d 805, 811 (7th Cir. 2000).

Here, the underlying claim is the excessive force claim, which is discussed below. However, Pollard, Strahada, Meli, Greff, or Schneider had no involvement in the March 8, 2013 strip search and control placement of the plaintiff. The plaintiff's allegations related to this claim stem from their supervisory positions that oversee the strip-search policy. The plaintiff alleges that the defendants were put on notice through several lawsuits, letters and complaints over many months of the "assaultive propensities and abusive conduct upon rear cuffed prisoners by defendants Beahm, Waller, Staniec, Schneider, Sabish, Gil, Burns, and others." After receiving this notice, the defendants allegedly failed to control the situation, which caused the plaintiff's injuries. Even in considering the facts in light most favorable to the plaintiff, the court nevertheless finds that the plaintiff fails to state a claim for failure to act against these defendants. The alleged notice to the defendants is not enough to satisfy the requirement that they have a "realistic opportunity" to prevent fellow officers from violating plaintiff's rights. *Harper*, 400 F.3d at 1064. Thus, the court will grant the defendants' Motion for Summary Judgment as to the failure to act claim.

3.2     Second Claim – Failure to Train

The court previously found a Failure to Train claim against Strahada, Meli, Greff, and Schneider. Failure to train claims are usually maintained against municipalities, not against individuals, *see, e.g., Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000). The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be "personally responsible for the deprivation of a

constitutional right." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* at 652. This definition recognizes that the individual does not have to have participated directly in the deprivation. *See McPhaul v. Board of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). Thus, a supervisor may be liable for "deliberate, reckless indifference" to the misconduct of subordinates. *See Chavez*, 251 F.3d at 651. ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")

Here, the plaintiff fails to provide any evidence that the named defendants did not provide proper training in reference to strip searches. Correctional officers are trained at the Corrections Training Center in Madison, Wisconsin, and receive approximately seven weeks of training at the Corrections Training Center prior to their appointment to a position as a correctional officer. (DPFOF ¶ 60.) After successfully completing this training, each correctional officer receives on-the-job training at the institution where they are assigned. (DPFOF ¶ 60.) WCI officers and sergeants assigned to the Segregation Unit train other officers about duties specific to that unit. (DPFOF ¶ 60.) Staff members are made well aware of the necessity of performing accurate strip searches and they follow the appropriate procedure very carefully. (DPFOF ¶ 60.) Experienced staff members demonstrate to new officers the proper procedure before new officers perform staff assisted strip searches. (DPFOF ¶¶ 60-64.) Each year correctional officers continue training and education, and each officer

receives updated training on the performance of strip searches and staff assisted strip searches. (DPFOF ¶ 60.)

The plaintiff here alleges that the officers did not receive proper training based on the defendants' actions the day of the March 8, 2013 strip search. The plaintiff also alleges that the defendants were put on notice as to the inadequate training through a series of complaints, letters, and lawsuits filed against certain guards. However, the allegation of an improper strip search or training does not by itself prove anything related to the actual training performed. Moreover, conclusory statements by the plaintiff of inadequate training, without a showing of personal knowledge, cannot survive at the summary judgment stage. Fed.R.Civ.P. 56(c)(4). Thus, the defendants' Motion for Summary Judgment as to the failure to train claim must be granted.

### 3.3 Claims Five, Six, and Ten – Excessive Force

The court previously found claims for excessive force against defendants Gill, Beahm, and Waller. The test for determining whether a prisoner has suffered cruel and unusual punishment prohibited by the Eighth Amendment has both an objective and a subjective component. The objective component focuses on whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The subjective component focuses on whether the officials acted with a sufficiently culpable state of mind. *Id.* In the excessive force context, these two components, "as a practical matter, collapse into a single inquiry because '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary

standards of decency'…'always are violated.' " *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir. 1994) (quoting *Hudson*, 503 U.S. at 9, 112 S.Ct. 995).

Thus, in determining whether an officer has used excessive force against a prisoner, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The factors relevant to making this determination include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Id.* at 321, 106 S.Ct. 1078. With regard to the last of these factors, while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force. *See Id.* at 9–10, 112 S.Ct. 995. Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights. *See id.* at 9, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Material issues of fact clearly exist as to the excessive force claims. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (discussing excessive force in the context of the Fourth Amendment). The defendants claim that "the video footage of the escort and strip search belies [the

plaintiff's] allegations of excessive force." Not only is defendants' assertion factually incorrect, but it is also misleading. The defendants completely ignore the fact that the view of the incident is significantly obstructed by a guard standing in front of the camera during the majority of the strip-search incident. The plaintiff alleges that Gill and Beahm used excessive force on plaintiff's wrists and broke his fingers, among other allegations. Based on the guards' positions in front of the camera view, it is impossible for the court to determine what, if any, improper force was used. Similarly, the video fails to conclusively establish that Waller did not fire and brandish a taser, as the plaintiff alleges. Although the defendants claim that Waller had no personal involvement in the search or control placement, the plaintiff's verified statement is enough to create a material issue of disputed fact. Thus, the defendants' Motion for Summary Judgment with respect to the use of excessive force by Gill, Beahm and Waller will be denied.

> 3.4 Claims Four, Seven and Nine – Medical Deliberate Indifference

A plaintiff alleging inadequate medical care in violation of the Eighth Amendment must demonstrate that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Hudson*, 503 U.S. at 8–9, 112 S.Ct. 995; *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321; *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Deliberate indifference" is "recklessness" in the criminal sense, *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970, and exists only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995), petition for cert. denied, (516 U.S. 993, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995)); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *see also Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Deliberate indifference may be manifested by officials "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05, 97 S.Ct. 285.

In addition, it must be noted that deliberate indifference to medical needs violates the Eighth Amendment only if the medical needs are serious. *Hudson*, 503 U.S. at 9, 112 S.Ct. 995 (citing *Estelle*, 429 U.S. at 103–04, 97 S.Ct. 285); *Brownell v. Figel*, 950 F.2d 1285, 1291 (7th Cir. 1991); *see also Hughes*, 931 F.2d at 428. When determining whether a medical need is "serious," the court should consider factors such as the severity of the medical condition, the potential harm that could result from a lack of medical care, and the actual harm caused by the lack of medical care. *See Burns v. Head Jailor of LaSalle Cnty. Jail*, 576 F.Supp. 618, 620 (N.D. Ill. 1984); *see also Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), cert. denied, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). A medical condition is "serious" if it may be "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

### 3.4.1 Defendants Beahm, Gill, Staniec, Jones, Burns, Waller, and Sabish

Material issues of fact clearly exist as to whether the defendants' actions constituted deliberate indifference to the plaintiff's medical needs. The defendants conclusively state that the plaintiff "was offered medical

attention and he refused" and that "nothing in [the plaintiff's] records shows that he submitted an HSR or otherwise requested medical attention." (Defs' Mot. Summ. J., Docket #152 at 21). However, the plaintiff's version of events sharply contrasts the defendants' version. The plaintiff alleges both in his complaint and in his verified affidavit that Beahm "tauntingly asked plaintiff if he wanted to see a nurse...and when he said 'yes,' Beahm snapped, 'you refused!'" (Pl. Aff. ¶ 26, Docket #217 at 8-9). The plaintiff states that Sabish, Burns, Jones, Gill, Waller, and Staniec heard this happen and did nothing. (*Id.* at ¶ 23). The plaintiff alleges that these defendants either knew he was seriously injured or at least suspected that he was, yet denied him treatment for his injuries for five days to cover up the excessive force. Thus, material issues of fact exist and summary judgment as to these defendants must be denied.

### 3.4.2 Defendants Deyoung and Waltz

Material issues of fact clearly exist as to the medical deliberate indifference claims against Deyoung and Waltz. Again, the defendants' conclusory statements that adequate care was give are disputed by the plaintiff's version of events. The fact that the plaintiff's medical records suggest that proper care was provided is not by itself conclusive evidence. Indeed,

> it would seem that the law must entertain the possibility that health care providers in a prison setting might bring certain biases to their occupation, be they caused by continuous exposure to inmates who may overstate their maladies, the need to maintain good working relationships with correctional officers, pressures exerted and felt within the chain of command, or, where medical services are being provided by a private contractor, a conscious or subconscious motive not to

> create problems that might result in nonrenewal of the contract.

*Sanders-El v. Spielman*, 38 F. Supp. 2d 438, 439 (D. Md. 1999). The plaintiff alleges that he asked both nurses for treatment on numerous occasions and that they falsified the medical records to cover up the excessive force used against the plaintiff. For example, the plaintiff alleges that on March 14, 2013, and March 15, 2013, Deyoung falsely wrote in his file that he refused medical exams. Additionally, on March 13, 2013, the plaintiff alleges that he showed his injuries to Waltz and asked for treatment, but that she looked at the wounds, ignored him, and continued her rounds. (Third Am. Compl., Docket #88 at 10). As such, the court finds that material issues of fact preclude summary judgment as to Deyoung and Waltz.

Accordingly,

IT IS ORDERED that the defendants' Motion for Summary Judgment (Docket #151) be and the same is hereby GRANTED in part and DENIED in part, as more fully described in detail above;

IT IS FURTHER ORDERED that defendants William Pollard, Donald Strahada, Anthony Meli, Brian Greff, and Jesse Schneider be and the same are hereby DISMISSED from this action;

IT IS FURTHER ORDERED that the defendants' Motion for a Protective Order (Docket #137) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that the plaintiff's Motion for Disclosure of Discovery Documents (Docket #192) be and the same is hereby DENIED as moot;

IT IS FURTHER ORDERED that the plaintiff's Motion for Cross-Summary Judgment (Docket #187) and Amended Cross-Motion for Summary Judgment (Docket #210) be and the same are hereby DENIED as untimely;

IT IS FURTHER ORDERED that the plaintiff's Motion for Judicial Notice (Docket #199) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that the plaintiff's Motions for an Emergency Stay of the summary judgment (Docket #218 #219) be and the same are hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge